IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND; and CHARLES A. WHOBREY, as Trustee, )))) | |
| *Plaintiffs,* ) | Case No. 20-cv-01624 |
| v. ) | Judge |
| THE HARTY PRESS, INC. a Connecticut corporation; GEORGE R. PLATT, an individual; MICHAEL F. PLATT, an individual; and ROBERT J. GRAHAM, an individual, ))))))) | Magistrate Judge |
| *Defendants.* ) | |

## COMPLAINT

Plaintiffs, Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Fund") and Charles A. Whobrey., one of the Fund's present trustees, allege as follows:

## JURISDICTION AND VENUE

1. This action is brought and maintained in accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and is a suit for breach of fiduciary duty and to recover employer contributions owed to the Fund by Defendants.

2. This Court has jurisdiction over this action under section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1).

3. Venue lies in this Court under section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the Fund is an "employee benefit plan" as that term is defined in ERISA and is administered at its principal place of business in Chicago, Illinois. Venue is also proper in this Court pursuant

to the forum selection clause contained in the Fund's Trust Agreement, which designates this district as the appropriate forum for lawsuits to collect unpaid contributions.

## PARTIES

4. The Fund is an employee benefit plan and trust, with its principal office located at 8647 W. Higgins Rd. in Chicago, Illinois.

5. The Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT") on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing health and welfare benefits to participants and beneficiaries of the Fund and paying the administrative expenses of the Fund.

6. Plaintiff Charles A. Whobrey is a trustee and "fiduciary" of the Fund as that term is defined in ERISA. Pursuant to section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Charles A. Whobrey is authorized to bring this action on behalf of the Fund and its participants and beneficiaries in his capacity as a trustee and fiduciary.

7. Defendant The Harty Press, Inc. ("Harty Press") is a corporation organized under the laws of the State of Connecticut. Harty Press is an "employer" and a "party-in-interest" as those terms are defined by sections 3(5) and 3(14)(C) of ERISA, 29 U.S.C. §§ 1002(5) and 1002(14)(C).

8. Defendant George R. Platt ("George") has been at all time relevant and continues to be the President of Harty Press.

9. Defendant Michael F. Platt ("Michael") has been at all times relevant and continues to be the Secretary of Harty Press.

10. Defendant Robert J. Graham ("Robert") has been at all times relevant and continues to be the Comptroller of Harty Press.

## BACKGROUND INFORMATION

11. Graphics Communication Local No. 1-L ("Local 1") of the Graphic Communications Conference, an International Brotherhood of Teamsters affiliated union, is a labor organization which represents, for the purpose of collective bargaining, certain employees of Harty Press and employees of other employers in the printing and publishing industry.

12. During all relevant times, Harty Press and Local 1 have been parties to a collective bargaining agreement pursuant to which Harty Press has been required to make contributions to the Fund on behalf of certain of its covered employees.

13. Harty Press and Local 1 are also parties to a Participation Agreement which requires Harty Press to pay contributions to the Fund on behalf of its covered employees.

14. The Fund and Harty Press are also parties to a Participation Agreement which requires Harty Press to pay contributions to the Fund on behalf of its non-bargaining unit employees at the same rate as its covered employees.

15. Harty Press agreed to be bound by the terms of the Fund Trust Agreement (the "Trust Agreement") and all rules and regulations promulgated by the Trustees under said Trust Agreement.

16. Under Article III, Section 1 of the Trust Agreement, Harty Press was required to "remit continuing and prompt Employer Contributions to the [Fund] as required by the applicable collective bargaining agreement, participation agreement, this Agreement and/or other written agreement to which the Employer is a party, applicable law and all rules and requirements for participation by Employers in the Fund as established and interpreted by the Trustees in accordance with their authority ..."

Article XI, Section 4 of the Trust Agreement provides that:

Non-Payment by an Employer of any moneys due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any Employer Contributions from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to attorneys' fees and such fees for late payment as the Trustees determine and as are permitted by law. The interest payable by an Employer, in accordance with the preceding sentence, shall be computed and charged to the Employer (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater). Any judgment against an Employer for Employer Contributions owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid Employer Contributions. The interest rate after entry of a judgment against an Employer for contributions and/or other amounts due shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JP Morgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized rate of 7.5% (whichever is greater), and such interest shall be compounded annually.

## **STATUTORY AUTHORITY**

17. Section 515 of ERISA, 29 U.S.C. § 1145, provides:

    Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

18. Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2) provides:

    In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan –

    (A)  the unpaid contributions,

  (B)  interest on the unpaid contributions,

  (C)  an amount equal to the greater of--

    (i)  interest on the unpaid contributions, or

    (ii)  liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

  (D)  reasonable attorney's fees and costs of the action, to be paid by the defendant, and

  (E)  such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

19. Section 409(a) of ERISA, 29 U.S.C. § 1109(a) provides:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach and to restore to such plan any profits of such fiduciary which may have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

20. Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1) provides:

In any action under this title (other than an action [to enforce §515]) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

## COUNT I – DELINQUENT CONTRIBUTIONS

21. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 20 of this Complaint as though fully set forth herein.

22. The Fund relies upon participating employers to self-report the work history of eligible employees. The self-reporting system requires participating employers to identify those employees for whom contributions are owed and requires the employers to identify the weeks worked by the covered employees. Based upon the employee work history reported by the employers, the Fund bills the employers for contributions.

23. Under this self-reporting system, participating employers initially establish a base group of employees for whom contributions are due. Thereafter, the employer is required to notify the Fund on a monthly basis of any of the changes in the employment status of individuals covered by the collective bargaining agreement or Participation Agreements (i.e. layoffs, new hires, terminations, etc.). The Fund relies on these reports submitted by employers to prepare a monthly contributions bill that is sent to the employer. If no changes are reported by the employer, the Fund assumes the same employees are still working and bills the employer accordingly.

24. Harty Press reported work history for its employees to the Fund for the periods of October 27, 2019 through November 30, 2019 and December 29, 2019 through January 25, 2020, and Harty Press has not subsequently reported any changes in the employment status of any individuals covered by the collective bargaining agreement or Participation Agreements.

25. Harty Press has breached the provisions of ERISA, the collective bargaining agreement, the Participation Agreements and the Trust Agreement by: a) failing to pay the contributions (and interest due thereon) owed to the Fund based upon the employee work history reported to the Fund by Harty Press for the period of October 27, 2019 through January 25, 2020, and b) by failing to pay the interest on the contributions owed by Harty Press for the months of July 2019 through October 2019 that is due as a result of the failure of Harty Press to timely pay contributions to the Fund for those months.

26. Despite demands that Harty Press perform its statutory and contractual obligations with respect to making contributions to the Fund, Harty Press has neglected and refused to pay the amounts that are due as a consequence of the conduct set forth in paragraph 25. In light of Harty Press's assertion that its failure to pay its contributions from July through October 2019 on time and its failure to pay its uncontested contribution liability to the Fund for the period after October 26, 2019, is a result of insufficient funds, the Fund believes that Harty Press will fail to timely remit contribution payments that come due after the date this Complaint is filed.

27. Harty Press owes the Fund $176,964.79 for unpaid contributions and interest as a result of the conduct set forth in paragraph 25 and amounts that are not known for the period subsequent to the filing of this Complaint.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against Harty Press in favor of the Fund, pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), for:

    (i) the unpaid contributions owed to the Fund by Harty Press through the date of judgment;

    (ii) interest on the unpaid contributions computed and charged at the greater of (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) an annualized interest rate of 7.5%;

    (iii) an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions; and

    (iv) attorney's fees and costs.

(b) Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

(c) For such further or different relief as this Court may deem proper and just.

## COUNT II – BREACH OF FIDUCIARY DUTY

28. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 27 of this Complaint as though fully set forth herein.

29. Pursuant to the collective bargaining agreement between Harty Press and Local 1, effective September 1, 2019, Harty Press was authorized to make a weekly deduction from each covered employee's paycheck for the employee component of the weekly contribution rate in the amount of $43.00 for employee only coverage, $55.75 for employee and child coverage, $87.15 for employee and spouse coverage, and $121.13 for employee and family coverage ("Bargaining Unit Employee Contributions").

30. Upon information and belief, Harty Press made weekly deductions from each non-bargaining unit employee's paycheck for the employee component of the weekly contribution rate in amounts equal to the Bargaining Unit Employee Contribution ("Non-Bargaining Unit Employee Contributions" together with Bargaining Unit Employee Contributions are "Employees' Contributions").

31. Upon information and belief, Harty Press deducted the agreed-upon Employees' Contributions each week from its employee's paychecks for the period of October 27, 2019 through January 25, 2020 and has continued to do so after January 25, 2020.

32. After their withholding by Harty Press, the Employees' Contributions became "plan assets" within the meaning of 29 C.F.R. § 2510.3–102(a).

33. Upon information and belief, Defendants George, Michael, and/or Robert exercised control over what payments were made by Harty Press from October 27, 2019 through the present. After October 27, 2019, Defendants George, Michael and/or Robert failed to pay the Employees' Contributions to the Fund and instead directed that the withheld amounts be disbursed to persons/entities other than the Fund and/or retained by Harty Press.

34. Defendants George, Michael and Robert are each a "fiduciary" with respect to the Fund pursuant to sections 3(21)(A)(i) and (iii) of ERISA, 29 U.S.C. § 1002(21)(A)(i) and (iii), because they exercised control over assets of the Fund, namely the Employees' Contributions.

35. Defendants George, Michael and/or Robert have breached their fiduciary duties under ERISA by failing to forward the Employees' Contributions to the Fund for the period of October 27, 2019 through January 25, 2020.

36. Defendants George, Michael and/or Robert owe the Fund past due amounts unknown for misappropriated Fund assets (not including interest) for the period of October 27, 2019 through January 25, 2020 for the conduct set forth in paragraph 33.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against Defendants George, Michael and/or Robert in favor of the Fund, pursuant to sections 409(a) and 502(g)(1) of ERISA, 29 U.S.C. §§ 1109(a), 1132(g)(1), for:

    (i) all plan assets George, Michael and/or Robert failed to forward to the Fund through the date of the judgment;

    (ii) interest on such plan assets computed and charged at the greater of (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day

        of the month for which the interest is charged, or (b) an annualized interest rate of 7.5%;

    (iii)    attorney's fees and costs.

(b)    Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually;

(c)    For such further or different relief as this Court may deem proper and just.

## COUNT III: EQUITABLE RELIEF

37.    Plaintiffs incorporate the allegations of paragraphs 1 through 36 as if fully restated herein.

38.    Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), provides, "A civil action may be brought—"

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. . .

39.    Pursuant to the CBA, the Participation Agreements, and the Trust Agreement, Harty Press is subject to an ongoing obligation to pay contributions to the Fund, but has failed to pay its monthly obligation for the period of October 27, 2019 through January 25, 2020.

40.    Harty Press has been delinquent in its contribution payments to the Fund for multiple months and the Fund believes Harty Press will continue to fail to fulfill its ongoing obligation to timely remit required contributions to the Fund for the period after January 25, 2020.

41. The Fund believes that Harty Press's failure to pay its current, ongoing contribution obligations to the Fund is due to Harty Press's financial problems.

42. Harty Press's next monthly contribution (for February 2020) is due on March 15, 2020 and is estimated by the Fund to be in excess of $53,000.00.

43. The Fund has no adequate remedy at law to prevent the continued refusal of Harty Press to comply with the terms of the CBA, the Participation Agreements, and the Trust Agreement.

44. Unless Harty Press, George, Michael and Robert are enjoined from failing to comply with their obligation to submit the required fringe benefit contributions, Harty Press's employees and the Fund will suffer irreparable harm.

45. As a result of Harty Press's contribution delinquencies, the Fund has suspended the payment of employee health and welfare benefit claims pending receipt of corresponding contributions or payment of the full cost of coverage by the individual employees. The employees of Harty Press are irreparably harmed by Harty Press's ongoing delinquency because they must either pay the full cost of coverage or go without coverage until the contributions are paid, even though the employees continue to work and have a portion of the contributions owed to the Fund deducted from their paychecks and which amounts are being improperly retained by Harty Press.

46. The Fund is irreparably harmed by Harty Press's non-payment because employer delinquencies such as Harty Press's adversely affect the Fund's ability to meet funding standards and negatively impacts the Fund's financial integrity.

47. In addition, Harty Press's continued delinquency will cause the Fund to lose the benefit of interest income that it would otherwise earn and cause the Fund to incur additional administrative expenses in connection with the detection and remedy of the delinquencies.

**WHEREFORE**, Plaintiffs request the following relief:

(a) An order to show cause why Defendants should not be enjoined from violating the provisions of ERISA, the CBA, the Participation Agreements, and the Trust Agreement;

(b) A preliminary injunction enjoining Defendants from violating the provisions of ERISA, the CBA, the Participation Agreements, and the Trust Agreement and requiring Defendants to timely remit monthly contributions to the Fund;

(c) A permanent injunction enjoining Defendants from violating the provisions of ERISA, the CBA, the Participation Agreements, and the Trust Agreement;

(d) Such further or different relief as the Court may deem proper and just.

Respectfully submitted,

*/s/ Matthew B. Wesley*
Matthew B. Wesley (ARDC #6327766)
Attorney for Plaintiffs
Central States Funds
8647 W. Higgins Road
Chicago, IL 60631
(847) 777-4035
mwesley@centralstatesfunds.org

March 6, 2020

TM:592026 / 20110005 / 3/6/20

-12-